GABRIEL SANDOVAL FIGUEROA, ETC., Plaintiff and Appellee, *v.* PUERTO RICAN LIFE INSURANCE CO., Defendant and Appellant.

No. R-69-331.     Decided October 13, 1970.

*Rieckehoff, Calderón, Vargas & Arroyo* for appellant. *Pedro A. Otero Fernández, Octavio Malavé Torres,* and *Lygia Diversé Verges* for appellee.

MR. JUSTICE RIGAU delivered the opinion of the Court.

Lydia Esther Ortiz, school teacher, resident of Bayamón, accepted to buy a life insurance policy which was offered to her through a circular letter which was distributed among the members of the Teachers' Association. Said circular letter described the policy as "a term insurance over your lives which guarantees the payment of the mortgages encumbering your homes now or in the future." According to the abovementioned offer the interested persons should constitute a normal risk and those under 60 years of age did not have to submit to a medical examination.

On August 20, 1964, Lydia Esther filled out the application form for the policy. Said form contains a number of questions which the applicants must answer by making a check mark before the words "Yes" or "No." Upon filling out those blanks the applicant of the case at bar answered in the affirmative that she was in good health; she did not answer a question which asked whether she had suffered any disease or operation or if she had been under medical treatment in the last ten years; and she denied having suffered from certain conditions which were detailed therein among which cancer was included. The application for insurance for $13,500 was approved by the insurance company without previous medical examination.

On October 25, 1964, Lydia Esther, at the age of 29 years, died of cancer of the colon. When plaintiff herein, Gabriel Sandoval Figueroa, widower of Lydia Esther and beneficiary of the policy, tried to collect the same the insurer refused to pay it and informed him in writing that the "fundamental reason" to deny his request was that the insured specified that she was not suffering from any disease, including cancer; that her death caused by cancer occurred on October 25; that the company issued the policy on September 4, which "shows" that at the date when the policy was issued the insured was already suffering from that disease.

Here comes into play § 11.100 of the Insurance Code, 26 L.P.R.A. § 1110, which reads as follows:

"All statements and descriptions in any application for an insurance policy or in negotiations therefor, by or in behalf of the insured, shall be deemed to be *representations* and *not warranties*. Misrepresentations, omissions, concealment of facts, and incorrect statements shall not prevent a recovery under the policy unless:

"(1)  Fraudulent; or

"(2)  Material either to the acceptance of the risk, or to the hazard assumed by the insurer; or

"(3) The insurer in good faith would either not have issued the policy, or would not have issued a policy in as large an amount, or would not have provided coverage with respect to the hazard resulting in the loss, if the true facts had been made known to the insurer as required either by the application for the policy or otherwise.

"When the applicant incurs in any of the actions enumerated in paragraphs (1), (2) and (3) of this section, the recovery shall only be prevented if such actions or omissions contributed to the loss that gave rise to the action." (Italics ours.)

As we can notice, the problem centers on the question whether at the date when the application for the insurance was subscribed to, on August 20, 1964, Lydia Esther *knew* that she was suffering from cancer. If she knew, the position of the insurance company would be correct for the concealment of that fact and its respective incorrect declaration would be, in that case, "material" to the acceptance of the risk assumed by the insurer. Subdivision (2) of the aforecited section. On the contrary, if the insured did not know that she was suffering from cancer then her answer was honest and the case falls within the normal risks which the insurer takes by accepting applications for insurance without the previous medical examination.

The position of the insurer is that Lydia Esther lied in answering in the application form that she was in good health, and that that was impossible at that time, August 20, 1964, because she died of cancer on October 25 of that year.

■ The Superior Court, after receiving the oral and documentary evidence, concluded that the deceased never told her physicians that she knew she was suffering from cancer and that the doctors did not tell her either. It concluded that the deceased answered the questions in the application form for the insurance as far as she had knowledge thereof and consequently the insurer was ordered to pay the amount of the policy.

A biopsy had been made to the deceased on September 11, 1964, and the 14th of that month she was operated on. The surgeons found that the cancer was so extensive that it was inoperable. Lydia Esther died, as we said before, on October 25 of that year.

Since Lydia Esther died, the determination of whether or not she knew that she was sick at the time when the policy was requested must be made by the courts on the basis of the indirect evidence available. Let's go to the record.

Dr. Juan Ramón Vilaró Grau testified that in September 1964 he treated Lydia Esther Ortiz; that her husband went for him to tell him that his wife was sick, with a possible tumor of the intestine, and that she needed an operation. He also testified that he saw a biopsy dated August 30 of that year (Tr. Ev. 17–21) ; that later on, together with Dr. Blas Ferraiouli, he operated on the patient and that she had cancer of the large intestine. He also testified that the patient never told him that she knew that she was suffering from cancer. (Tr. Ev. 40) ; he did not testify that he was certain that she knew; he testified that he thought Lydia Esther's husband did know about it.

Dr. Blas Ferraiouli testified that Sandoval's wife was operated on on September 14, 1964. Upon being questioned of the time of the cancer inception he answered:

"It is somewhat difficult to determine exactly when this occurs, because in some patients the cancer develops more rapidly than in others, but this record is a true record. Here it says that this lady was submitted to an operation in 1962; that her appendix was removed and they did not find the cancer. In August 1963 she was also submitted to an operation, a cesarian, and the cancer was not found, or it was not noticed by the surgeon who performed the operation, who was a gynecologist." Tr. Ev. 52.

Later on Dr. Ferraiouli testified as follows:

"Now, doctor, can you assert now, that that lady knew by August 20, that she had cancer?

"Of what year?

"Of 1964.

"It was difficult.

"It was difficult?

"Yes. (Nodding.)

"In other words, that she had not noticed it?

"Yes. (Nodding.)" Tr. Ev. 58.

He also testified that cancer of the colon is not common in Puerto Rico; that more than 80 percent of that type of cancer is found in persons over 40 years of age; and that it is not commonly found in a young person (29 years) as Lydia Esther Ortiz was. Tr. Ev. 60.

Further on the doctor continued his testimony as follows:

"Doctor, as you observed a moment ago that the symptoms of that cancer are difficult to diagnose, I ask you, if in this particular case, it could happen that this lady did not notice the symptoms of the cancer?

"The thing is that no patient knows what he has. No patient knows whether or not he has cancer.

"And she did not know that she had it?

"She did not know." Tr. Ev. 64.

.    .    .    .    .    .    .    .

"Doctor, now I am going to show you an application for insurance which this lady filled out, and I am going to ask you to read carefully question number four and tell me, if a person suffering from the symptomatology of the disease as a result of which this person died, can, on August 20, answer all those questions in the negative?

"On August 20?

"On August 20. Take notice of the date of that application, August 20.

"She may answer in the negative.

"She may answer in the negative?

"Yes. (Nodding.)

"She may answer it?

"Yes.

"She may have never felt any symptom, which would drive her to answer those questions in the affirmative?

"And this question, the one marked as number five?

"Let me answer the Judge's question first. According to this

answer, she was honestly stating that she had no abdominal suffering." Tr. Ev. 66–67.

■ Accepting that some of the answers given by the deceased in the application form for the insurance were not correct, or that she had omitted some information (for example, the delivery by cesarean) said omissions or incorrect informations were not material to the acceptance of the risk and the same do not warrant the nonpayment of the policy. A false answer given knowingly about the suffering of cancer would indeed have been material since that disease caused the death of Lydia Esther. The Special Sub-Committee for the study of the bill which established the Insurance Code of Puerto Rico stated the following over that particular:

"According to this more modern rule, which is generally accepted in the North American jurisdictions, the material fact in regard to which the insured did not tell the truth, must have contributed to his death or disability to prevent the collection of the policy. Otherwise the material fact by itself will not be considered as such so as to determine the validity of the policy contract." IX Journal of Proceedings, Senate 1424 (1957).

On the grounds of the foregoing we conclude that the error assigned—that the trial court erred in the weighing of the evidence—was not committed, and the judgment rendered in this case by the Superior Court, San Juan Part, on March 7, 1969, will be affirmed.

Mr. Chief Justice Negrón Fernández and Mr. Justice Santana Becerra did not participate herein.